*Formatted for Electronic Distribution*                                                                 *For Publication*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT

Filed & Entered
On Docket
November 13, 2012

_____

**In re:**
    Dale A. Patterson,                                      Chapter 7 Case
         Debtor.                                            # 12-10240

_____

Appearances:  Heather Z. Cooper, Esq.                James B. Anderson, Esq.
                      Kenlan, Schwiebert, Facey & Goss, P.C.   Ryan Smith & Carbine, Ltd
                      Rutland, VT                                      Rutland, VT
                      Attorney for the Debtor                    Attorney for Merchants Bank

## MEMORANDUM OF DECISION
### GRANTING THE DEBTOR'S MOTION TO AVOID LIEN,
### OVERRULING MERCHANTS BANK'S OBJECTIONS TO THAT MOTION, AND
### OVERRULING MERCHANTS BANK'S OBJECTION TO THE DEBTOR'S HOMESTEAD EXEMPTION

On May 28, 2012, Dale A. Patterson (the "Debtor") filed a motion to avoid lien pursuant to 11 U.S.C. § 522(f) (the "Motion") (doc. # 10). The lien holder, Merchants Bank ("Merchants"), filed a combined objection to the Motion and objection to the Debtor's claim of a homestead exemption (doc. # 14) (the "Objection").[1] At issue is whether the Debtor may protect his current homestead property from enforcement of Merchants' judgment, even though the judgment was entered prior to the date the Debtor acquired his current homestead, based upon an "exemption rollover" exception in the Vermont homestead law, and whether the Debtor may avoid Merchant's judgment. The parties have filed memoranda of law (doc. ## 43, 45) and the matter is fully submitted. For the reasons set forth below, the Court grants the Debtor's motion and overrules Merchants' objection.

### JURISDICTION

This Court has jurisdiction over this the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and declares it to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K), over which the Court has authority to enter a final order on the merits.

---

[1] While this document itself is titled as a combined objection, Merchants docketed two filings. The first it docketed as its Objection to the Debtor's claim of Homestead Exemption on Schedule C (doc. # 14). Merchants filed an identical document that it docketed as its objection to the Debtor's § 522(f) Motion to Avoid Lien (doc. # 15). This memorandum addresses both the Debtor's claim of a homestead exemption and his Motion.

## QUESTIONS PRESENTED

In this analysis of whether the Debtor may avoid the Merchants lien and whether the Debtor may claim his current homestead exempt from enforcement of the Merchants lien, there are three legal questions presented:  First, did the Debtor acquire his current homestead with consideration derived from the disposition of his prior homestead, as required by 27 V.S.A. §109?  Second, must the Debtor prove that he has equity in his homestead property in order to avoid the Merchants lien under § 522(f)? Third, under the fact presented, may the Debtor avoid the Merchants lien?

## UNDISPUTED MATERIAL FACTS

The Court finds that the following facts are both material and undisputed:

1. On May 25, 1999, the Debtor and his ex-wife, Melissa Welch Patterson, purchased their marital residence at 9 Grand View Terrace, Rutland, Vermont ("9 Grand View Terrace") (Def.'s Mem. Supp., Stmnt. Facts, ¶ 1 (doc. # 45-1)); (Pl.'s Mem. Supp., Stmnt. Facts ¶ 1 (doc. # 43).

2. The Debtor signed a series of guarantees with Merchants dated April 10, 2006, June 8, 2007, and October 10, 2008 (Def.'s Mem. Supp., Stmnt. Facts ¶ 41); (Pl.'s Mem. Supp., Stmnt. Facts ¶ 3).

3. His ex-wife did not sign the guarantees (Pl.'s Mem. Supp., Stmnt. Facts ¶ 5).

4. On March 3, 2011, Merchants acquired a judgment in the amount of $533,277.71 against the Debtor in the Vermont Superior Court, based upon the Debtor's guarantees (the "Judgment") (Def.'s Mem. Supp., Stmnt. Facts ¶¶ 39, 40).

5. On April 1, 2011, the Debtor's ex-wife filed a complaint for divorce (Def.'s Mem. Supp., Stmnt. Facts ¶ 4); (Pl.'s Mem. Supp., Stmnt. Facts ¶ 7).

6. The divorce complaint stated "[t]he parties own the following property singly or jointly: Home residence, furniture and furnishings, personal clothing and effects, vehicles, bank accounts and a membership interest in [the Debtor's business]," (Def.'s Mem. Supp., Stmnt. Facts, Ex. J–¶ 7).

7. On May 13, 2011, the Debtor acquired a new homestead located at 12 Foster Place, Rutland, Vermont ("12 Foster Place") (Def.'s Mem. Supp., Stmnt. Facts ¶ 5); (Pl.'s Mem. Supp., Stmnt. Facts ¶ 17).

8. The Debtor used funds from his IRA in the amount of $59,985.00 to purchase 12 Foster Place (Def.'s Mem. Supp., Stmnt. Facts ¶¶ 8, 14); (Pl.'s Mem. Supp., Stmnt. Facts ¶ 25).

9. The Debtor subsequently applied for a home equity line of credit (Def.'s Mem. Supp., Stmnt. Facts ¶ 15); (Pl.'s Mem. Supp., Stmnt. Facts ¶ 28).

10. The Debtor used funds from the home equity line of credit to replenish the funds he had withdrawn from his IRA (Def.'s Mem. Supp., Stmnt. Facts ¶ 16).

2

11. The Debtor and his father each hold a one-half interest in 12 Foster Place (Def.'s Mem. Supp., Stmnt. Facts ¶ 6); (Pl.'s Mem. Supp., Stmnt. Facts ¶ 17).

12. On May 16, 2011, the Debtor's deed to 12 Foster Place was recorded in the land records (Pl.'s Mem. Supp., Stmnt. Facts ¶ 19).

13. Prior to when the Debtor's ex-wife filed the divorce complaint, the Debtor and she reached an agreement as to the division of many of their marital assets, including the marital residence and the Debtor's IRA. (Pl.'s Mem. Supp., Stmnt. Facts ¶ 7–12, Ex. 2, Ex. 4).

14. On June 9, 2011, the Debtor and his ex-wife executed a stipulation under which the Debtor received all interest in his business and his ex-wife received all interest in the marital residence at 9 Grand View Terrace (the "Preliminary Stipulation") (Def.'s Mem. Supp., Stmnt. Facts ¶ 26, Ex. K).

15. On June 15, 2011, the family court incorporated the Preliminary Stipulation into an order approving the stipulation (Def.'s Mem. Supp., Stmnt. Facts ¶ 27, Ex L).

16. On June 20, 2011, the Debtor quitclaimed his interest in the marital residence to his ex-wife (Def.'s Mem. Supp., Stmnt. Facts ¶ 29, Ex. M).

17. On September 13, 2011, Merchants recorded its Judgment against the Debtor and his business (the "Judgment Lien") (Def.'s Mem. Supp., Stmnt. Facts ¶ 43, Ex B).

18. On October 11, 2011, the Debtor and his ex-wife entered into a final stipulation in which the Debtor and his ex-wife shared custody rights, they each retained all personal property and motor vehicles in their possession free and clear of any claim by the other, and each party retained sole liability for all debts in his or her name (the "Final Stipulation") (Def.'s Mem. Supp., Stmnt. Facts ¶ 33, Ex. N).

19. On October 12, 2011, the Final Stipulation was incorporated into a Judgment and Decree of Divorce (Def.'s Mem. Supp., Stmnt. Facts ¶ 34, Ex O).

20. On March 23, 2012, the Debtor filed a voluntary petition under Chapter 7 (doc. # 1).

21. In his petition, the Debtor disclosed his joint interest in 12 Foster Place on Schedule A (valued at $72,500), and claimed a homestead exemption under the Vermont state exemptions, designated as 100% of the property value, in the amount of $145,000.00, on Schedule C (doc. # 1, Sch. A and Sch C).

22. On June 1, 2012, the Debtor filed amended schedules to clarify that the value of his one-half interest in 12 Foster Place and amount he claimed as exempt was $72,500.00 (doc. # 17, Sch. C).

## DISCUSSION

**1.  Did the Debtor Acquire his Current Homestead with Consideration Derived from the Disposition of His Prior Homestead?**

According to the affidavits of the Debtor and his ex-wife, they agreed to an amicable division of their marital property prior to the commencement of the divorce proceeding. As part of their agreement, the Debtor would look for a new home near the former marital residence. During the course of the divorce, the parties entered into two stipulations to partially document their agreement. The Preliminary Stipulation, dated June 9, 2011, granted to the Debtor all interest in his business and granted to his ex-wife all interest in 9 Grand View Terrace. The Final Stipulation, dated October 11, 2011, without reference to the Preliminary Stipulation, allocated other assets and rights between the parties, including shared custody rights, retention of personal property and motor vehicles, and continuing sole liability for all individual debts.

In May 2011, in accordance with the agreement between the Debtor and his ex-wife, the Debtor acquired the residential property at 12 Foster Place.[2] The Debtor funded the purchase of his interest in 12 Foster Place with funds he had withdrawn from his solely owned IRA account. Subsequent to the purchase of 12 Foster Place, the Debtor applied for, obtained, and used funds from a line of credit to replenish the amount he had withdrawn from the IRA. Upon filing his bankruptcy petition, the Debtor claimed a homestead exemption in 12 Foster Place, and Merchants filed an objection asserting that the homestead exemption did not apply to its debt because Merchants had obtained its lien against the Debtor prior to the Debtor's purchase of this property.

Merchants argues, first, that under the Preliminary Stipulation, the Debtor and his ex-wife made an even exchange of property: the business interest for the former marital residence. Based on this even exchange, Merchants' position is that the consideration derived from the Debtor's disposition of his former homestead is limited to his interest in his business.

To interpret the scope and effect of the state court's distribution of the Debtor's marital assets, the Court relies upon Vermont case law. The Vermont Supreme Court has observed the complexity of determining whether a distribution of martial property is equitable stating that "'[t]he distribution of property is not an exact science and does not always lend itself to a precise mathematical formula; all that is required is that such distribution be equitable.'" Lalumier v. Lalumier, 149 Vt. 469, 471, 544 A.2d 1170, 1172 (1988) (quoting Victor v. Victor, 142 Vt. 126, 130, 453 A.2d 1115, 1117 (1982). Additionally, courts must take into account that "both spouses have an equal right to ask for marital property . . . ." In re Farrar, 219 B.R. 48, 53 (Bankr. D. Vt. 1998). The quest for an equitable distribution

---

[2]  The Debtor acquired a one-half interest and his father acquired the other one-half interest.

becomes more challenging when one of the parties has a small business. In this regard, the Vermont Supreme Court has "recognized the difficult task that faces the trial court in valuing a small business because the court's ability to assign a correct value is limited by the evidence presented by the parties." Carpenter v. Carpenter, No. 2009-138, 2009 WL 4573851, *2 (Vt. Nov. 18, 2009) (citing Kanaan v. Kanaan, 163 Vt. 402, 407, 659 A.2d 128 (1995)). It is likely because of this challenge of valuing business interests and assets that have unique value to one of the spouses that courts regularly permit parties to make agreements and stipulations between themselves. The Supreme Court has observed "[i]t is likely that whatever agreement a couple reaches together will be preferable to that imposed by a court, which is a stranger to the marriage." Kanaan, 163 Vt. at 413, 659 A.2d at 136. However, the state court retains the duty of determining whether a property distribution is indeed equitable for both parties as "[e]ven if there had been a stipulation between the parties the court would have to make an independent determination of whether the distribution is equitable." Poulin v. Upham, 149 Vt. 24, 28, 538 A.2d 181, 183 (1987) (citing 15 V.S.A. § 751). In consideration of these general guidelines for division of property in a Vermont divorce proceeding, this Court must conclude that the state court adjudicating the Debtor's divorce took into account all of the transfers between the Debtor and his ex-wife and determined they resulted in an equitable distribution of all their marital assets.

The Court rejects Merchants' arguments regarding the stipulations in the divorce court, and its position on the informal agreement between the Debtor and his ex-wife regarding their amicable division of marital property. As to the stipulations, this Court declines to view the Preliminary Stipulation, the Final Stipulation, and the Judgment and Decree of Divorce individually and independent of each other for two reasons. First, and most importantly, the Preliminary Stipulation does not state that the parties engaged in a one-to-one exchange of the business interest for 9 Grand View Terrace; it merely articulated the agreement the parties had reached with respect to these two assets. Second, the Preliminary Stipulation did not assign values to the two properties so this Court has no basis upon which to determine whether it was an exchange of equivalently valued assets. Given the difficulties associated with the task of equitable distribution of marital assets, especially when a small business is involved, this Court will not read a one-to-one exchange into a stipulation (or judgment and decree of divorce). Instead, this Court believes, absent an explicit statement that certain assets were exchanged on a one-to-one basis, the division of marital assets must be considered a global resolution of the divorce and a total distribution of the marital property.

Moreover, the Debtor and his ex-wife stated in their affidavits, under the penalty of perjury, they had an informal agreement regarding the division of their marital assets, including the marital residence and the Debtor's IRA. Vermont law is clear that informal pretrial agreements may be upheld in divorce

5

proceedings. Kanaan, 163 Vt. at 412–413, 659 A.2d at 135. The fact that neither the Preliminary Stipulation, the Final Stipulation, nor the Final Judgment and Decree of Divorce refers to the informal agreement regarding the division of the marital assets is not determinative. Based upon the record, the Court concludes the Debtor and his ex-wife had and abided by an informal agreement regarding the exchange of marital assets, and that the disposition of the marital residence and the IRA was part of their global, informal agreement.

It also appears the state court distributed all of the parties' marital assets. The divorce court had before it a reference in the divorce complaint to "bank accounts" and incorporated the stipulations into the divorce decree. Indeed, the relevant statute regarding property settlement in divorce states, "[a]ll property owned by either or both of the parties, however and whenever acquired, shall be subject to the jurisdiction of the court." See 15 V.S.A. § 751(a) (emphasis added). This Court presumes the state court exercised its jurisdiction over an allocation of all of the marital property and effectuated a comprehensive distribution of those assets in its judgment. Furthermore, though not specifically mentioned by the divorce court, the IRA would have been encompassed by the provision in the judgment directing that each party retain all of his or her personal property. Accordingly, the Court rejects the first prong of Merchants argument that the consideration derived from the Debtor's disposition of his former homestead is limited to his interest in his business.

The second prong of Merchants' argument is that even if the Court were to view the IRA as consideration derived from disposition of the Debtor's prior homestead, this is insufficient to shield the homestead from Merchants' Judgment Lien because the IRA funds were not permanently placed in the new homestead. Merchants posits that when the Debtor replenished his IRA through the line of credit he voided his right to exempt that property from the enforcement of Merchants' judgment. This argument depends on two provisions of the Vermont homestead statutes:

> Liability of homestead for debts.
>
> Such homestead shall be subject to attachment and levy of execution upon causes of action existing at the time of acquiring the homestead, except as otherwise provided in this chapter. For that purpose, such time shall be the date of the filing of the deed of such homestead in the proper office for the record of deeds.

27 V.S.A. § 107.

> Acquisition of new homestead.
>
> When a person acquires a new homestead, the prior homestead shall be liable for his or her debts and may be conveyed by him or her like other real estate. Such new homestead shall not be liable for causes of action against him or her to which such prior homestead would not have been liable, if such new homestead is acquired with the consideration derived from the sale or other disposition of such prior homestead, or with other means not derived from the property of such person.

6

27 V.S.A. § 109 (emphasis added).

The Debtor concedes that the Merchants debt evidenced by the Judgment Lien existed prior to his purchase of 12 Foster Place, and therefore by operation of the general rule set out in 27 V.S.A. § 107, his new homestead would be subject to the Judgment Lien. However, this statute states there are exceptions to its general rule and the Debtor relies upon the exception set forth in 27 V.S.A. § 109 allowing him to protect his current homestead if he acquired it with consideration derived from disposition of his prior homestead. The Court has already determined that the IRA funds, when viewed as part of a global equitable distribution of marital property, were part of the consideration the Debtor received from the disposition of his former homestead. Additionally, there is no dispute that the Debtor used funds from the IRA to purchase a one-half interest his new homestead. Therefore, a straightforward application of the exception set forth in 27 V.S.A. § 109 compels the Court to conclude that the Debtor's current homestead property is exempt from enforcement of Merchants' Judgment Lien.

Merchants urges the Court to reject this conclusion, to look beyond the text of the Vermont homestead statutes and to take into account the unusual facts of the salient transactions in order to prevent an injustice in this case. Merchants emphasizes that although the Debtor used the IRA funds to purchase 12 Foster Place, ultimately he financed the purchase of the new homestead with a bank loan – not with proceeds from the disposition of his prior homestead. Merchants also points out that if the Debtor prevails, he will, in effect, be getting a the benefit of two exemptions from his IRA account: one due to its nature as an exempt individual retirement account and one in the form of proceeds used to purchase his homestead. Merchants presents a question of first impression with respect to the interpretation of these statutes.

Merchants asserts the statute should not be construed to permit this as a sort of double-dipping exemption practice and insists that in order to derive the protection of the 27 V.S.A. § 109 exception to 27 V.S.A. § 107, the Debtor must have permanently applied the proceeds from his former homestead to the purchase of his current homestead. However, the Court may only look beyond the text of the statute to interpret its meaning and proper application if the statute is not clear. U.S. v. Shreveport Grain & Elevator Co., 287 U.S. 77, 83–84, 52 S. Ct. 42, 44 (1932). In Vermont, when construing a statute the goal "is to give effect to the intent of the legislature." Gallipo v. City of Rutland, 173 Vt. 223, 235, 789 A.2d 942, 951 (2001). The starting place is always "with the plain meaning of the words used in the statute." Smith v. Desautels, 2008 VT 17, ¶ 18, 183 Vt. 255, 262–63, 953 A.2d 620, 624–25 (2008). Courts "'presume that all language in a statute was drafted advisedly and that the plain and ordinary meaning of the language used was intended.'" State v. Fletcher, 2010 VT 27, ¶ 10, 187 Vt. 632, 635, 996 A.2d 213, 217 (2010) (quoting Comm. to Save Bishop's House, Inc. v. Med. Ctr. Hosp. of Vt., Inc., 137 Vt. 142,

153, 400 A.2d 1015, 1021 (1979) (citations omitted)). "If legislative intent is clear from the language, we enforce the statute 'according to its terms without resorting to statutory construction.'" State v. LeBlanc, 171 Vt. 88, 91, 759 A.2d 991, 992 (2000) (quoting Tarrant v. Dept. of Taxes, 169 Vt. 189, 197, 733 A.2d 733, 739 (1999)). Here, the text of 27 V.S.A. §§ 107 and 109 is clear, and thus this Court will apply the statutes as written and will not utilize additional tools of statutory construction.

      Sections 107 of the homestead statute sets forth the general rule that in Vermont homestead property is subject to attachment and levy of execution upon causes of action that existed at the time the debtor acquired the homestead property, subject to certain exceptions set out elsewhere in the statute. Section 109 articulates that an exception from such execution applies if (a) the prior homestead would not have been subject to execution, and (b) the debtor acquired the new homestead with consideration derived from the sale or other disposition of the debtor's prior homestead. There is no requirement in this exception that the use of the proceeds from the prior homestead be the permanent funding source for the acquisition of the new homestead. The state legislature considered the need for exceptions to the general rule, inserted the exception found in 27 V.S.A. § 109, and could have inserted the permanency requirement Merchants wishes for as well. It did not do so. Given the clarity of the statute and unequivocal lack of any permanency requirement, it would be improper for this Court to read in such a requirement. For these reasons, the Court rejects the second prong of Merchants' argument and denies Merchants' request to read a permanent financing requirement into the state statute, and prohibit the Debtor from availing himself of the benefits of 27 V.S.A. § 109 based upon the "temporary" nature of the Debtor's use of proceeds from his former homestead. See In re Greene, 451 B.R. 331, 340–41, n.3 (Bankr. D. Vt. 2011) (determining that 12 V.S.A. § 3023 contained no durational or reinvestment requirements and declining to read any such requirement into the statute); Cavanaugh v. Abbott Labs., 145 Vt. 516, 529–30, 496 A.2d 154, 162 (1985) (examining a statute of repose, finding no ambiguity in the statute and thus declining to read into the statutory language a limitation suggested by defendants); see also Warner v. Citifinancial, Inc. (In re Warner), 446 B.R. 651, (Bankr. D. Vt.), aff'd, No. 5:11-cv-105-cr (D. Vt. July 12, 2011) (analyzing statute regarding curative effect of the passage of time on defective instruments and enforcing the statute according to its plain language).

      The Court recognizes that in this particular case a straightforward application of the statutes will result in harsh consequences on the lender. However, the Court will not violate the well established precepts of statutory interpretation and application based upon the unusual facts presented in a single case. This would simply increase support to the adage that bad facts make bad law. Rather, the Court makes its determination based on the clear language of both the general rule and the exception in the two governing state statutes, the absence of a permanent financing requirement in the statutory exception, and the record

8

which demonstrates the mechanics of the Debtor's acquisition of his new homestead were the result of the Debtor's divorce planning without any indication of a scheme to defraud Merchants.

In sum, the Court finds the Debtor purchased his current homestead with proceeds of his prior homestead and therefore, the Debtor's current homestead is exempt from enforcement of Merchants Judgment Lien pursuant to 27 V.S.A. § 109.

**2.    Is Proof of Equity in the Homestead Property a Prerequisite for § 522(f) Relief?**

Merchants' Objection to the Motion for § 522 relief attacks the Debtor's right to claim a homestead exemption as against Merchants' claim. Merchants argues that the Debtor has no equity in 12 Foster Place, having equity is an essential pre-requisite for any claim of a homestead exemption, the Debtor is thus not eligible for a homestead exemption, and therefore then he cannot avoid Merchants' Judgment Lien as impairing his homestead exemption under § 522. The Court overrules this aspect of Merchant's objection. The right of debtors to obtain relief under § 522(f) without a demonstration of equity in the homestead property is well-established. See In re Brody, 297 B.R. 5, 7 (Bankr. S.D.N.Y. 2003); In re Wallace, 453 B.R. 78, 82–83 (Bankr. W.D.N.Y. 2011). There is nothing in pertinent case law or the statutory formula that requires the Debtor to prove he has equity in the property as a prerequisite for lien avoidance under § 522.

**3.    Has the Debtor Established the Statutory Criteria to Avoid Merchants' Judgment Lien?**

The lien avoidance statute in question, § 522, sets forth a formula for determining whether, and to what extent, a debtor may avoid a judicial lien. It provides:

> (f)    (1)    Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
>> (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523 (a)(5); or
>>
>> . . . .
>
> (2)
>
>> (A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—
>>
>>> (i) the lien;
>>>
>>> (ii) all other liens on the property; and
>>>
>>> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>>
>> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f).

Merchants holds a Judgment Lien against the Debtor's homestead property in the amount of $533,277.71. The other lien against the homestead is the Peoples United Bank's first mortgage in the amount of $99,729.00. Adding these values to the homestead exemption the Debtor is entitled to ($125,000.00) results in a sum of $758,006.71. From this amount, one subtracts the value of the homestead property absent any liens ($72,500.00) to determine the extent of the impairment, under the §522(f) formula. Since the extent of the impairment of the exemption, $685,506.71, exceeds the entire value of Merchants lien, $533,277.71, the entire lien is avoidable under § 522.

### CONCLUSION

Based upon the foregoing analysis, the Court reaches the following conclusions with respect to the three questions presented. First, the IRA was part of the consideration the Debtor received for the disposition of his former homestead, the Debtor used the IRA to acquire his current homestead, and the fact that the Debtor replaced the IRA funds through a home equity line of credit does not extinguish the rights set forth in 27 V.S.A. § 109. Second, the Debtor need not prove he has equity in his homestead property in order to avoid Merchants' lien against this property under § 522(f). Third, based upon the undisputed facts in the record with respect to the value of the homestead property and the amount of liens against that property, the Debtor has established the right to avoid the Merchants Judgment lien under § 522(f). Accordingly, the Court grants the Debtor's Motion to avoid lien, overrules all of Merchants' objections to the Motion, and overrules Merchants' objection to the Debtor's claim that his homestead is exempt from enforcement of Merchants' Judgment Lien.

This constitutes the Court's findings of fact and conclusions of law.

November 13, 2012  Colleen A. Brown
Burlington, Vermont  United States Bankruptcy Judge